## MICHIGAN BELL TELEPHONE COMPANY, a Michigan corporation, Plaintiff,

v.

## DRUG ENFORCEMENT ADMINISTRATION, an agency of the Department of Justice, an executive department of the United States of America, and the United States of America, a governmental entity, jointly and severally, Defendants.

Civ. No. 88–CV–70784–DT.

United States District Court,
E.D. Michigan, S.D.

Sept. 2, 1988.

Craig A. Anderson, Detroit, Mich., for plaintiff.

Surell Brady, Marcia K. Sowles, Asst. U.S. Attys., Detroit, Mich., for defendants.

### MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

Plaintiff Michigan Bell Telephone Company ("Michigan Bell") seeks to recover some $24,800 from the defendant Drug Enforcement Administration ("DEA") representing the cost of complying with a series of subpoenas issued in 1986 and 1987 for toll and subscribers' account records.[1] Michigan Bell also seeks to impose a fee schedule which would govern the cost of compliance with future subpoenas issued

---

1. Subscribers' records include the identity of the person who has contracted for telephone services at a given number, the location of the telephone and the length of time the service has been provided. Toll records contain the telephone numbers of long-distance calls placed by the subscriber.

by DEA. The matter is presently before the court on defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).[2]

As the parties have presented evidence outside of the pleadings, the motion will be considered as one for summary judgment. A court may enter summary judgment on a claim if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Here the parties do not contest the material facts of the dispute: the volume of requests or the plaintiff's costs in complying with them. Rather the issue presented is whether the defendant is entitled to judgment as a matter of law.

The parties submissions reveal the following. Michigan Bell sought to negotiate an agreement with DEA in February, 1986 to establish a fee schedule which would compensate it for the costs of compliance with DEA's requests for toll and subscribers' information (Barton affidavit ¶ 5). Other law enforcement agencies have agreed to compensate Michigan Bell for compliance with analogous requests at the following rates: subscriber information, $0.50 per customer; toll records, $7.50 per customer; copies of documents, $0.20 per page. *Id.* Plaintiff claims that these fees only represent a fraction of the total cost of compliance. *Id.* at ¶ 7. In March, 1986 plaintiff submitted a proposed agreement which would have required DEA to pay $12,500 representing the cost of anticipated information requests over the term of the agreement. (Ex. C to defendants' brief in support, ¶ 4). DEA refused to agree to the proposal in May, 1986. (*See* Ex. D to defendants' brief in support). Plaintiff subsequently billed DEA at the rates charged other law enforcement agencies for compliance with the information requests. (See Ex. F to defendants' brief (bill for compliance with subpoenas from July 1, 1986— October 31, 1986 for $3,787.80); Ex. G to defendants' brief (monthly bills from November, 1986—April, 1988 totaling $21,-755.70)).

The role of the information requested by DEA in its law enforcement efforts is described in the declaration of David Westrate (attached as Exhibit B to defendants' brief in support). Subscriber information and toll records are "essential tools for criminal investigators." *Id.* at ¶ 9. This information is routinely used in conjunction with a telephone decoder to facilitate investigations. This decoder, which can only be obtained with court approval, see 18 U.S.C. §§ 3122, 3123, provides information about all numbers dialed from a particular telephone. *Id.* at ¶ 12. The identity of the persons called by the suspect can then be ascertained by further subpoenas of subscriber information from the telephone company. *Id.* at 12. Information gleaned from basic subscriber and toll information then is important in obtaining court authorization for arrest warrants and electronic interception of communications. *Id.* at ¶ 14.

Plaintiff claims recovery pursuant to provisions of the Comprehensive Drug Abuse Prevention Act of 1970, Pub.L. 91–513, 84 Stat. 1236 (1970) in particular, 21 U.S.C. §§ 876 and 878; the Fourth Amendment to the U.S. Constitution, the Electronic Communications Privacy Act (ECPA), Pub.L. 99–508, 100 Stat. 1848 (1986), 18 U.S.C. § 2701 *et seq.*, and the court's "power to enforce and condition compliance with federal administrative subpoenas." (Complaint ¶ 14.) In its response to DEA's motion, plaintiff characterized its position as solely relying upon provisions of the Electronic Communications Privacy Act, 18 U.S.C. § 2701, *et seq.* (Response brief at 3). Plaintiff effectively conceded to defendants' contention that it could not state a claim for relief under 21 U.S.C. §§ 876, 878 or the Fourth Amendment. In effect, then, plaintiff has not opposed summary judgment on these claims, and defendants' motion is properly granted to that extent.

Section 876 of Title 21 of the U.S. Code grants broad power to the Attorney General to "subpoena witnesses, compel the attendance and testimony of witnesses, and

2. Plaintiff has also filed for leave to file a supplemental brief. The motion is hereby granted.

The court has considered the brief in its ruling on the instant motion.

requires the production of any records (including books, papers and other tangible things)" relevant to enforcement of the criminal narcotics laws. *See, generally, U.S. v. Hossbach,* 518 F.Supp. 759, 766–7, (E.D.Pa.1980) (noting exceptional nature of a grant of subpoena power in aid of a criminal investigation to an executive agency); *U.S. v. Mountain Tel. & Tel. Co.,* 516 F.Supp. 225 (D. Wyoming 1981) (subpoena of telephone toll records within scope of power granted by § 876). The present case involves subpoenas issued pursuant to this statutory grant, as well as by grand juries and "other types of formal requests for information, including summons, court orders and search warrants" (plaintiff's response brief at 1 n. 1).

The ECPA governs access by governmental agencies to the subscriber information and toll records involved in this case. Section 2703 of the Act specifies the conditions under which plaintiff may disclose subscriber records and toll information. In particular § 2703(c)(1)(B) provides that:

> A provider of electronic communication service or remote computing service shall disclose a record or other information pertaining to a subscriber to or customers of such service (not including the contents of communications covered by subsection (a) or (b) of this section) to a governmental entity only when the governmental entity:
>
> (i) uses an administrative subpoena authorized by a Federal or State statute, or a Federal or State grand jury subpoena;
>
> (ii) obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent state warrant;
>
> (iii) obtains a court order for such disclosure under subsection (d) of this section; or
>
> (iv) has the consent of a subscriber or customer to such disclosure.

Subsection (d) of § 2703 provides procedural requirements for issuance of a court order to obtain such information and preserves the right of the service provider in such cases to promptly move to quash the order "if the information or records required are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden."

Section 2706 of the act provides for reimbursement of the costs of compliance with information requests incurred by service providers. While not a model of legislative drafting, it is clear that Congress did not intend that service providers be compensated for costs of compliance for routine requests for toll or subscriber information. As a general rule, the government must pay service providers "a fee for reimbursement for such costs as are reasonably necessary and which have been directly incurred in searching for, assembling, reproducing, or otherwise providing such information" requested pursuant to § 2703, *inter alia.* § 2706(a). Subsection (b) provides that fees required under subsection (a) shall be agreed upon by the provider and governmental entity. Where no agreement has been reached, the statute envisions resolution "by the court which issued the order for production of such information (or the court before which a criminal prosecutor relating to such information would be brought, if no order was issued for production of the information)." 18 U.S.C. § 2706(b).

An exception to this general rule is provided in subsection (c) for toll records and subscriber information: "[t]he requirement of subsection (a) of this section does not apply with respect to records or other information maintained by a communications common carrier ... relate[d] to telephone toll records and telephone listings obtained under section 2703 of this title." This payment as described in § 2706(a) where it finds that "the information required is unusually voluminous in nature or otherwise caused a burden on the provider."

In enacting § 2706, Congress clearly intended that a governmental entity which requests, pursuant to § 2703, telephone toll records and listing information generally need not pay the provider for the necessary costs involved in their production. Congress excluded this category of information from the general rule of reimbursement "because for the most part the government

has not traditionally paid for such information." H.R.Rep. 647, 99th Cong., 2d Sess. 73 (1986) *accord* Sen. Rep. 541, 99th Cong., 2d Sess. 43 (1986), U.S.Code Cong. & Admin.News 1986, pp. 3555, 3597. ("No fee is normally required for access to such records.") In discussing a draft of § 2706 which was subsequently enacted, the House Report noted that Congress:

> expects that the Department of Justice will by regulation (subject to notice and comment) promulgate written criteria to guide the parties and the courts with respect to the meaning of the terms 'voluminous' and 'undue burden.' The committee hopes that the uniform application of regulations will reduce the need to rely on judicial intervention to resolve reimbursement disputes. The most important factor to examine is the nature of and past practices in the area. To the extent that the request exceeds the nature and scope of information usually sought without compensation, then the reimbursement provisions would come into play.

H.R. Report 647 at 74. The legislative history evinces Congress' desire to strike a balance which would permit service providers some reimbursement for information which had traditionally been provided without cost. Further, it is apparent that Congress recognized that this judgment would have to be rendered in light of the aggregate costs of compliance. Comprehensive regulations defining the responsibilities of law enforcement agencies and service providers was expected to minimize this sort of dispute. The Department of Justice has apparently failed to promulgate regulations under § 2706, however.[3]

■ The first issue raised is whether § 2706 of the Act permits plaintiff to maintain an action such as this. Plaintiff has not challenged a particular subpoena or a discrete group related to a single criminal prosecution. Rather, it argues that the bulk of DEA's requests since passage of the ECPA have been voluminous and burdensome. In effect, Michigan Bell seeks to have this court define whether the reimbursement provisions of § 2706(c) are implicated by DEA's quantity of requests over the past two years and order reimbursement pursuant to a proposed fee schedule which would also govern future requests. Plaintiff essentially seeks to have this court assess the costs of compliance and make the essentially legislative judgment delegated by Congress to the Department of Justice. The ECPA does not provide for judicial review of this magnitude and for that reason DEA's motion for summary judgment is properly granted.

The ECPA envisions limited judicial review of disputes over reimbursement. In particular, the reimbursement provisions, considered together with § 2703(c), indicate that judicial intervention is limited to challenges made before compliance with a request or after compliance before the court hearing the criminal prosecution. Congressional provision for comprehensive rulemaking by the Department of Justice in this area supports this reading of the Act. The legislative history obviously envisions that the Department of Justice will consider both the historic levels of past requests and their associated costs as compared to present levels. Regulations which specify an acceptable aggregate level of requests would both diminish the number of future disputes and, presumably, simplify their resolution. Given the flexibility law enforcement agencies such as DEA possess to tailor the amount of material requested in any particular subpoena, adjudication of isolated disputes over the burdensomeness of any particular request will inevitably fail to achieve the global judgment of costs and community responsibility which Congress clearly intended to be struck in § 2706. That much being said, there is no indication that Congress either intended or expected

---

3. The court recognizes that the failure of the Department of Justice to promulgate regulations in this area which would bind DEA leaves plaintiff in a difficult position, in light of the court's conclusion that the ECPA does not envision maintenance of an action such as this. The court must also note, with some dismay, the failure of the DEA to negotiate some agreement regarding compensation in light of the volume of requests it has apparently made to Michigan Bell and the provisions of the ECPA.

that the federal courts would undertake that essentially legislative responsibility. Rather, § 2706 reflects an understanding that the court's role would be limited to the adjudication of particular disputes connected with isolated requests for information. There is no indication that a service provider may maintain an action pursuant to § 2706 to determine whether an aggregate level of requests has been burdensome or voluminous. Adjudication of such a dispute would be beyond the institutional capacity of the judiciary, and there is no indication that Congress intended that the courts should be required to render such a judgment.

In short, absent voluntary consent by the DEA or forthcoming regulatory action by the Department of Justice, Michigan Bell is left by the ECPA to challenge information requests on a piecemeal basis, either before compliance or thereafter. It may not maintain an action such as this to recover its compliance costs on the theory that cumulatively the requests are burdensome and voluminous. Because this court has concluded that Congress did not intend to provide for such a cause of action in enacting the ECPA, defendant is entitled to judgment as a matter of law. Accordingly, summary judgment will be entered in favor of the DEA.

IT IS SO ORDERED.