William BUCK, Plaintiff–Appellee,

v.

U.S. DIGITAL COMMUNICATIONS, INC.,
and Visual Information Services Corp.,
Defendants–Appellants.

No. 97–4086.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1998.

Decided April 6, 1998.

Steven H. Cohen (argued), Elizabeth J.
Caprini, Krasnow, Sanberg & Cohen, Chica-
go, IL, for Plaintiff–Appellee.

James K. Mequerian (argued), D'Ancona &
Plaum, Chicago, IL, Daniel Gunning, Santa
Clarita, CA, for Defendants–Appellants.

Before EASTERBROOK, RIPPLE and
KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Visual Information Services Corp. hired
William Buck as its CEO in November 1994
and issued him almost 2 million shares of
U.S. Digital Communications (its corporate
parent) as part of the inducement to accept
this position. Buck and his employer had a
falling out, leading to a suit by U.S. Digital
(until recently known as VisCorp) seeking
the return or cancellation of these shares.
*VisCorp v. Buck*, No. 97 C 3390 (N.D.Ill.).
The parties quickly agreed that Buck would
not attempt to sell any of the shares and that
VisCorp would not attempt to interfere with
Buck's possession of the stock pending deci-
sion by a court of competent jurisdiction.
The point of this standstill agreement was to
freeze the parties' relations until the case
could be decided. Buck tried to turn the

agreement to his advantage by filing this lawsuit—in the same court where the first was pending—seeking a declaratory judgment that per the SEC's Rule 144 (17 C.F.R. § 230.144) he could sell 220,000 of the shares without registration under the federal securities laws. Buck believes that, if the court issues such a judgment, then the standstill agreement authorizes him to sell the shares without waiting for resolution of the question whether the 1994 transaction is subject to rescission. U.S. Digital asserted as defenses the same theories it advanced as plaintiff in No. 97 C 3390.

Buck asked the district court to accelerate decision on his request for a declaratory judgment, see Fed.R.Civ.P. 57, while U.S. Digital sought consolidation of the two cases. On reference from the district judge, a magistrate judge recommended that this case be expedited and a declaratory judgment entered to the effect that Buck is "entitled to transfer, convey, dispose of, or sell 220,000 shares of his VisCorp common stock." U.S. Digital protested that no court has yet determined that the stock is Buck's to sell, but the district court, writing on the back side of a minute-order form, stated that ownership is at issue in No. 97 C 3390 and need not be resolved to decide whether a sale would comply with Rule 144. The brief order concludes: "Therefore, the court adopts and incorporates Magistrate Judge Rosemond's Report and the holdings contained therein pursuant to 28 U.S.C. § 636(b)(1). Accordingly, judgment is entered in favor of Plaintiff. IT IS SO ORDERED." The front side of the minute order reads in full: "Before the court are Defendants' objections to Magistrate Judge W. Thomas Rosemond Jr.'s Report and Recommendation. For the reasons stated on the reverse side, the Defendants' objections are overruled." The court did not enter a declaratory judgment under Fed. R.Civ.P. 58, and neither side asked it to do so. Instead defendants appealed.

 Appellate jurisdiction is the first and only issue we need consider. Buck filed this suit seeking a declaratory judgment. So far he has not got one. The district court said that Buck is entitled to one and overruled objections to a magistrate judge's rec-

ommendation, but the court has not entered a judgment of any kind, and there is no final decision from which an appeal will lie. *Metropolitan Life Insurance Co. v. Cammon*, 929 F.2d 1220, 1221 (7th Cir.1991); *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 527 (7th Cir.1988); *Foremost Sales Promotions, Inc. v. Director, BATF*, 812 F.2d 1044 (7th Cir.1987); *Azeez v. Fairman*, 795 F.2d 1296, 1297 (7th Cir.1986). Although a case may be appealed once it is plainly over, even if the district court fails to comply with Rule 58 by entering judgment on a separate document, see *Otis v. Chicago*, 29 F.3d 1159 (7th Cir. 1994) (en banc), it remains essential to know who won what. If the terms of declaratory relief appeared in the court's opinion and it were plain that the case is finished, we would not stand on ceremony—at least not as far as the need for a "final decision" is concerned, although the lack of specificity might make the decision hard to enforce. Compare *Metzl v. Leininger*, 57 F.3d 618, 620 (7th Cir.1995), with *Bates v. Johnson*, 901 F.2d 1424, 1428 (7th Cir.1990). But here as in *Azeez* and *Bethune Plaza*, the terms of the invisible-ink declaratory judgment are mysterious, and the controversy continues in the district court, because defendants asserted as defenses the same claims they advanced in No. 97 C 3390, which the judge has yet to consider.

The magistrate judge used the words "entitled to sell" 220,000 shares, but this leaves vital issues dangling. What concretely must U.S. Digital do if Buck sells some shares? The shares VisCorp issued to Buck in 1994 were transferred under the private-offering exemption of § 4(2) of the Securities Act of 1933, 15 U.S.C. § 77d(2), and therefore did not have to be registered under § 5, 15 U.S.C. § 77e. They bear a restrictive legend forbidding resale unless that sale finds its own exemption from the registration requirement. Consider some possible, and more complete, dispositions (all implicitly beginning "it is ordered and adjudged that …"):

1. Buck's sale of 220,000 shares of his U.S. Digital stock would not violate Rule 144.

2. Rule 144 does not interfere with Buck's proposed sale of 220,000 shares

of U.S. Digital stock, so he may sell the shares under the terms of Rule 144, and therefore prevails under the standstill agreement.

3. Buck is entitled to sell 220,000 .shares of stock without violating either Rule 144 or his employment agreement with Visual Information Services Corp., and U.S. Digital therefore must treat him as the incontestable owner of these shares.

4. if Buck sells 220,000 shares of stock, the transfer agent must transfer the shares on its books to the buyer.

5. same as (4), but substitute "U.S. Digital" for "the transfer agent".

6. if Buck sells 220,000 shares of stock, the transfer agent must transfer the shares on its books to the buyer and issue new certificates that do not bear restrictive legends.

7. same as (6), but substitute "U.S. Digital" for "the transfer agent".

The magistrate judge's opinion implies that he was thinking along the lines of version (1), but this would be an advisory and altogether irrelevant opinion. It reads like a judgment against the world, and it has nothing to do with the obligations these defendants have to Buck.

It is not possible to "violate" Rule 144. The rule is one of many safe-harbor regulations issued by the Securities and Exchange Commission under the authority of § 19(a), 15 U.S.C. § 77s(a), a statute providing that "[n]o provision of this subchapter imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule or regulation of the Commission". Rule 144 reduces the uncertainty created by the statutory definition of an "underwriter." An owner of stock may resell, whether or not the original sale was registered, under § 4(1) of the Act, 15 U.S.C. § 77d(1), which exempts from registration "transactions by any person other than an issuer, underwriter, or dealer." As the holder of a large bloc, and a former corporate insider, Buck is at risk of being deemed an "underwriter", a term that "means any person who has purchased from an issuer with a view to ... the distribution of any security". Section 2(a)(11), 15 U.S.C. § 77b(a)(11). "[V]iew to ... the distribution"

is notoriously slippery language that strikes fear into the hearts of securities practitioners. See *United States v. Wolfson*, 405 F.2d 779 (2d Cir.1968); Thomas Lee Hazen, 1 *Treatise on the Law of Securities Regulation* § 4.24 (2d ed.1990). Moreover, Buck's transferees would be at risk under the second sentence: "As used in this paragraph the term 'issuer' shall include ... any person directly or indirectly controlling or controlled by the issuer". If Buck, as a former control person, is an "issuer," then any buyers of his stock may become "underwriters" and lose the benefit of § 4(1). If all conditions of Rule 144 are met, however, then the participants are not "engaged in a distribution" and cannot be underwriters. Although compliance with Rule 144 negates the possibility of a "distribution," noncompliance with the Rule's terms does not mean that there has been a "distribution." Investors and their customers may take advantage of any exemption under § 4 of the Act whether or not they qualify for the Rule 144 safe harbor; the alternatives are more risky, but none the less lawful. See Rule 144(j) ("this rule ... is not the exclusive means for reselling [restricted] securities"). Rule 144 forbids nothing; only § 5 of the '34 Act requires registration. This is why it is impossible to "violate" Rule 144, see Louis Loss & Joel Seligman, 3 *Securities Regulation* 1506–07 (1989), and why a declaratory judgment along the lines of (1) above would be an advisory irrelevancy. This particular safe harbor has no legal effect other than to prevent claims against the seller (Buck), the broker-dealer (not a party here), and the customer (ditto) that they have engaged in an unregistered distribution of stock. Rule 144 has nothing to do with investors' legal rights against issuers such as U.S. Digital.

Version (2) above is not advisory because it connects Rule 144 to the relations between Buck and U.S. Digital. But we can't believe that the district court meant that if a sale would not violate any particular rule, then Buck is free to sell his stock outright notwithstanding the unresolved controversy in No. 97 C 3390. Suppose Buck had asked for a declaratory judgment that, because U.S. Digital is a United States corporation, he

may sell the stock without violating any law of the European Union. The statement "a sale of 220,000 shares would not violate E.U. law" would be as true as the statement "a sale of 220,000 shares would not violate Rule 144" but could not conceivably amount to the legal declaration of which the standstill agreement in No. 97 C 3390 speaks. For that agreement to make sense, the judicial declaration has to resolve the parties' dispute, rather than assert a truism.

Possibility (3) would indeed resolve the parties' dispute, and therefore would be both final and nonadvisory (though it might be legally erroneous), but it is not consistent with the district court's brief explanation, which said that the issues being contested in No. 97 C 3390 remain open to decision in that case.

Possibilities (4) to (7) are variations on a theme: that any purchaser from Buck can get good title, perhaps with the restrictive legend vanishing in the process. An ability to pass clean title is an element of ownership valuable to Buck. We do not know whether U.S. Digital is its own transfer agent, hence variants (5) and (7). The colloquy at oral argument suggests that it is not (Buck's lawyer tells us that U.S. Digital has instructed the transfer agent not to change registered ownership), and because the actual transfer agent is not a party it is unclear what a judgment in this form would accomplish. At all events, the phrases "transfer agent" and "restrictive legend" do not appear in the magistrate judge's recommendation, so it would not be sound to proceed as if one of these forms of judgment had been entered.

■ Our ability to list seven forms of declaratory judgment—none of which is sure to be what the district court had in mind—shows that the judgment is not final. The appeal must be dismissed for want of jurisdiction. But the problem we have encountered is not just the lack of a separate piece of paper under Rule 58. It is that this dispute cannot sensibly be resolved independently of the controversy in No. 97 C 3390. As if to prove the link, action in No. 97 C 3390 has been deferred by the district court pending this appeal. Our mandate will issue today, and the district court should immedi-

ately consolidate No. 97 C 3390 with this case and resolve the parties' complete controversy.