# In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 04-2262, 04-2385, 04-4308 & 05-1002

AMERITECH CORPORATION,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

E. MICHAEL MCCANN, District Attorney
of Milwaukee County, Wisconsin,

*Defendant-Appellee, Cross-Appellant.*

_____

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 99-C-675—**Rudolph T. Randa**, *Chief Judge.*

_____

ARGUED DECEMBER 6, 2004—DECIDED APRIL 12, 2005

_____

Before EASTERBROOK, KANNE, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Now making its second appearance in this court, this suit presents questions about the meaning and constitutionality of 18 U.S.C. §2706, part of the Electronic Communications Privacy Act. This section requires any "governmental entity" that demands certain information from phone companies to pay for the expense of

its provision. Michael McCann, the District Attorney for Milwaukee County in Wisconsin, has refused to comply with this statute. When Ameritech (a subsidiary of SBC), which provides phone service in Wisconsin and other parts of the Midwest, sued to enforce §2706, the district judge ruled that the litigation is foreclosed by principles of state sovereign immunity. (District Attorneys in Wisconsin are officers of the state.) We reversed, 297 F.3d 582 (2002), holding that prospective obedience may be compelled under *Ex parte Young*, 209 U.S. 123 (1908). On remand the district court opined that the District Attorney must comply with §2706 whenever it governs—but the district judge refused to say when it *does* govern. 308 F. Supp. 2d 911 (E.D. Wis. 2004). Ameritech has appealed again. Following oral argument we held matters in abeyance until the district court entered a proper judgment, which it had neglected to do. See *Buck v. U.S. Digital Communications, Inc.*, 141 F.3d 710 (7th Cir. 1998); *American Interinsurance Exchange v. Occidental Fire & Casualty Co.*, 835 F.2d 157 (7th Cir. 1987); *Azeez v. Fairman*, 795 F.2d 1296, 1297 (7th Cir. 1986). A real declaratory judgment and a fresh notice of appeal at last present the case for decision.

The dispute concerns "terminating AMA reports." Unlike cell phone companies, which bill their customers for calls received as well as calls made, landline phone companies bill for outgoing calls only. The network that routes and connects each call "knows" its destination; how else could it connect the call and compute the customer's bill (which may vary by distance between the call's origin and destination)? The system for generating and retaining this information is called "automated message accounting" or AMA. Customers' bills often show this information. Ask a landline phone company such as Ameritech "who placed the calls received by customer X?", however, and it has no easy way to answer, as the computer databases organize all of the information by which customer placed the calls rather than by which customer received them.

AMA information is stored on searchable media, but compiling a report about the origin of calls terminated (= received) at a given number—hence, "terminating AMA report"—takes both human and computer time. Each report for a given number requires an hour or two of employees' time to set up the data-processing request and turn the resulting raw data into a report that non-specialists can follow, plus about 15 minutes of computer time per day covered by the report. These are powerful (and expensive) computers needed to handle a flood of information: Ameritech terminates about 25 million calls daily in Wisconsin alone. Fifteen minutes per recipient per day adds up; when the District Attorney wants a terminating AMA report for one number for one month, he is requisitioning at least seven hours of time on a mainframe computer (potentially as much as 20 hours), plus an hour or two of skilled labor. And Ameritech receives more than 400 requests for terminating AMA reports monthly in the Midwest.

Ameritech wants to be compensated for the expense of producing these reports. The need to pay for services rendered also will induce law-enforcement personnel to be less profligate in their demand for these reports, which at least in Wisconsin they see as free goods. According to Ameritech, §2706 requires law-enforcement agencies to pay for the information. Here is the statute:

> (a) Except as otherwise provided in subsection (c), a governmental entity obtaining the contents of communications, records, or other information under section 2702, 2703, or 2704 of this title shall pay to the person or entity assembling or providing such information a fee for reimbursement for such costs as are reasonably necessary and which have been directly incurred in searching for, assembling, reproducing, or otherwise providing such information. Such reimbursable costs shall include any costs due to necessary disruption of normal operations of any

electronic communication service or remote computing service in which such information may be stored.

(b) The amount of the fee provided by subsection (a) shall be as mutually agreed by the governmental entity and the person or entity providing the information, or, in the absence of agreement, shall be as determined by the court which issued the order for production of such information (or the court before which a criminal prosecution relating to such information would be brought, if no court order was issued for production of the information).

(c) The requirement of subsection (a) of this section does not apply with respect to records or other information maintained by a communications common carrier that relate to telephone toll records and telephone listings obtained under section 2703 of this title. The court may, however, order a payment as described in subsection (a) if the court determines the information required is unusually voluminous in nature or otherwise caused an undue burden on the provider.

Section 2703 in turn provides for governmental access to AMA records. State and federal law-enforcement officials throughout the nation pay routinely. Not so in Wisconsin, where officials have dug in their heels. Since 1986, when §2706 was enacted, the statute has produced only two litigated cases—one dealt with an allegedly excessive aggregate level of requests by a user willing to pay, see *Michigan Bell Telephone Co. v. DEA*, 693 F. Supp. 542 (E.D. Mich. 1988), and the other is this suit, now in its sixth year, in which the requester is in denial. Public officials in Wisconsin not only refuse to pay but also make a disproportionately high number of demands compared with law-enforcement officials in other states. That Wisconsin's prosecutors treat

terminating AMA reports as free doubtless explains this fact, and the volume of demands explains Ameritech's concern about the drain on its resources.

As we've already mentioned, the district court originally dismissed Ameritech's suit on sovereign-immunity grounds, and we remanded for decision on the merits. What followed was peculiar. Although federal courts are supposed to explore all non-constitutional grounds of decision first, to ensure against unnecessary constitutional adjudication, see *Jean v. Nelson*, 472 U.S. 846, 854 (1985); *Horn Farms, Inc. v. Johanns*, 397 F.3d 472, 477 (7th Cir. 2005), the district judge began with a series of constitutional issues and then refused to address the main statutory question at all—making the rest of its opinion largely, if not wholly, advisory. The upshot was a declaratory judgment that the District Attorney must pay compensation whenever it is due, but not specifying when that might be. Neither side is satisfied with that truism. We shall tackle the issues in the right order, starting with the statute and moving to the Constitution only to the extent necessary in light of the statutory decision.

Logically the first statutory question is the one the district judge refused to address: whether the exemption in §2706(c) covers terminating AMA reports. If it does, then the case is over. The district judge thought it inappropriate to broach the subject because §2706(b) calls on the court that required the disclosure to set the amount of compensation. True enough, but this suit is not about the *amount* of compensation; Ameritech seeks a prospective declaration that will determine the *kinds of reports* for which compensation is required. That's why, we held in 2002, the litigation comes within *Ex parte Young*. The district judge refused to address the effect of §2706(c) because he treated this suit as a quest for money. This repeats the mistake that led to our prior reversal. We see no point in remanding a second time and will resolve the issue ourselves. Given the District

Attorney's intransigence, and the fact that subpoenas are issued *ex parte*, there are obvious gains to resolving the question now instead of hoping that the District Attorney will spontaneously start asking state courts to fix compensation under §2706(b). (We refer throughout this opinion to "the District Attorney," because one named D.A. is the sole defendant. But that defendant is represented in this court by the Attorney General of Wisconsin, and his position is that of the State as an entity rather than an idiosyncratic view from Milwaukee.)

According to the District Attorney, terminating AMA reports are exempt from compensation because they "relate to" telephone toll records. The reports come from the AMA data that phone companies create and use in the regular course of business, so they must relate to those data. Language cannot be cut into little snippets, however; this phrase takes color from the preceding language: "records or other information maintained by a communications common carrier that relate to telephone toll records". If state officials want "records"—for example, bills and equivalent statements—that phone companies "maintain" in the course of their phone business, they may have them for free; likewise if the state wants the raw "information." Read this way, the exemption covers copies of customers' bills and not, for example, the papers that Ameritech's accountants use to produce its balance sheet and tax return. But the District Attorney does not want copies of customers' bills or the raw data on 25 million calls a day. He wants reports that Ameritech does not "maintain" but must create on demand. Because Ameritech does not "maintain" terminating AMA reports, they are not covered by §2706(c)'s exception.

According to the District Attorney, §2706(a) requires judgment in his favor even if §2706(c) does not. Section 2706 applies only to demands by "governmental entities," and that means (the District Attorney contends) the federal government alone. Certainly that's not what §2706(a) says.

"A governmental entity" is considerably broader than "the federal government." The point of §2706 is not to distinguish the federal government from other governments, but to distinguish the public from the private sector. Any private actor who wants information from a phone company will have to negotiate and pay for the service, when §2702 allows disclosure at all. Governments have a power of compulsion, and §2706 attaches a price tag to the use of that power, just as the Constitution's takings clause requires compensation for other uses of governmental power to obtain private property.

Although the Electronic Communications Privacy Act does not define the term "governmental entity," it uses that phrase in several sections in ways that make application to state and local governments unmistakable. For example, §2703 specifies how a "governmental entity" can go about obliging a phone company to hand over records. The statute gives examples, such as "an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena", §2703(b)(1)(B)(i). Other options include a "State warrant" (referred to in three subsections) and a "Federal or State grand jury or trial subpoena" (in §2703(c)(2)). Then there is §2703(d), which distinguishes what "a State governmental authority" must do from how a federal governmental body proceeds, an odd reference indeed if the category "governmental entity" does not include states.

The language of §2703 and §2706 taken together is enough to satisfy any plain-statement requirement for application of federal law to the states. Cf. *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991). Although the Congressional Budget Office expressed an opinion that the 1986 law would not impose new costs on states, this view—on which Congress did not vote, and the President did not sign—cannot alter the meaning of enacted statutes. It suggests instead that the CBO erred (or perhaps thought that compensable de-

mands would be so rare that the expenses under §2706 would not make a dent in a governmental budget).

Next in line is the District Attorney's argument that §2706 does not preempt state law. It does not contain an express declaration of preemption, the District Attorney observes, and therefore (he says) does not supersede state law. Since when has such a declaration been required? The Constitution's supremacy clause does all the heavy lifting. Federal statutes prevail over state and local statutes to the extent of any inconsistency, whether or not Congress so declares one statute at a time. See *International Paper Co. v. Ouellette*, 479 U.S. 481, 489 (1987).

What's more, the parties' to and fro about preemption is beside the point. No state law excuses or forbids compensation. Federal and state law may differ without one preempting the other: for example, a federal speed limit of 80 miles per hour on interstate highways would not preempt a lower speed limit under state law, because a driver could comply with both rules at the same time. See *Amanda Acquisition Corp. v. Universal Foods Corp.*, 877 F.2d 496 (7th Cir. 1989). So, too, state law that fails to provide for compensation when telephone companies disclose information is not inconsistent with a federal law that does require compensation; payment is compatible with both laws. Only a state law along the lines of "a District Attorney is entitled to records for free" would pose a preemption issue, and there is no such law in Wisconsin. Thus the question is simply what §2706 itself requires.

Section 2706(a) provides that compensation is payable when "a governmental entity obtain[s] the contents of communications, records, or other information under section 2702, 2703, or 2704 of this title". The District Attorney insists that he obtains terminating AMA reports under Wis. Stat. §968.135 rather than under any federal statute. That does not fly, for reasons that should be appar-

ent from our discussion of the "governmental entity" question. Section 2703 specifies how information is obtained from phone companies, and a subpoena authorized by a state statute is one of those means. Thus when the District Attorney invokes Wis. Stat. §968.135 or any equivalent route to compel Ameritech to produce a terminating AMA report he has obtained information "under" §2703.

Having interpreted §2706 as obliging state and local governments to pay for the phone records they require, we must address the District Attorney's multiple constitutional objections. He contends, for example, that Congress lacks authority to regulate this subject. Yet the commerce power includes all *channels* of interstate commerce, including the phone system. See *Pensacola Telegraph Co. v. Western Union Telegraph Co.*, 96 U.S. 1 (1878); *United States v. Lopez*, 514 U.S. 549, 558 (1995); *United States v. Morrison*, 529 U.S. 598, 608-09 (2000). That's one point of *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366, 377-86 (1999), which rejected another state's argument that the national government must keep hands off of the state's regulation of firms that carry intra-state phone calls. See also *Louisiana Public Service Commission v. FCC*, 476 U.S. 355 (1986).

The District Attorney might as well argue that he (and the state judiciary) may ignore the federal wiretap statutes (including §2702), and the fourth amendment, when obtaining access to the contents of "local" calls. Prudently, however, he concedes that the Omnibus Crime Control and Safe Streets Act of 1968, which regulates wiretapping, is within the commerce power even as applied to intra-state calls. See *United States v. D'Antoni*, 874 F.2d 1214, 1218-19 (7th Cir. 1989). If that statute may be applied to states, why not the Electronic Communications Privacy Act? It is an interesting detail, though not vital to the constitutional analysis, that the Electronic Communications Privacy Act is an amendment to Title III of the Omnibus Crime Control and Safe Streets Act. What does matter is that both of these statutes

regulate the telephone network, which reaches worldwide and is securely within the national power.

As for the contention that §2706(b) impinges unduly on state sovereignty by opening state courts to private suits, see *Alden v. Maine*, 527 U.S. 706 (1999): the District Attorney (which is to say the state itself), not a private party, is the plaintiff in state court. Once states open their courts to litigation, they must apply federal rules as well as those under state law. The supremacy clause gives no other alternative. See *Testa v. Katt*, 330 U.S. 386 (1947). State courts must comply with the wiretap laws and the fourth amendment; so too they must comply with other federal rules affecting what information, and under what conditions, telecommunications firms provide to state prosecutors. Thus when the District Attorney petitions the state court for an order compelling Ameritech to prepare and provide a terminating AMA report, Ameritech (as the respondent) is entitled to insist that the state court follow federal law by attaching a price tag under §2706(b). See *Erickson v. Board of Governors*, 207 F.3d 945, 952 (7th Cir. 2000).

No prosecutor or court in Wisconsin has been "commandeered" to do anything; §2706 just places a condition on activity that states elect to engage in, and from which they may desist as freely. Cf. *Reno v. Condon*, 528 U.S. 141 (2000). This is another thing (beyond the use of *Ex parte Young*) that our case has in common with *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002): nothing compelled Maryland to regulate phone service and prices, but if it chose to do so it had to comply with applicable federal laws. See also *MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 345 (7th Cir. 2000). If Wisconsin wants to keep compensation questions out of its courts, it can repeal Wis. Stat. §968.135 (and any similar sources of authority), and then the state judiciary will not need to resolve these disputes—but of

course the prosecutors then won't have compulsory process and will need to negotiate with Ameritech about the price to be paid for terminating AMA reports.

The judgment of the district court is vacated, and the case is remanded with instructions to issue a new declaratory judgment covering all of the points in this opinion. Given Wisconsin's longstanding noncompliance with §2706, and its penchant for litigation, the declaratory judgment should provide that in the future the District Attorney must tender compensation as part of every request under Wis. Stat. §968.135 that Ameritech provide a terminating AMA report, and must agree to litigate the amount of compensation in state court if Ameritech deems the tender inadequate. Unless such an offer is made and included in the state court's order, Ameritech need not provide the requested information. A provision of this kind will prevent the District Attorney from prolonging the guerilla warfare in which the state has been engaged for almost 20 years.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*