Samantha J. COMFORT, on behalf of her minor child and friend, Elizabeth NEUMYER, et al., Plaintiffs,

v.

LYNN SCHOOL COMMITTEE, et al., Defendants,

and

Commonwealth of Massachusetts, Defendant–Intervenor.

No. C.A. 99–11811–NG.

United States District Court, D. Massachusetts.

Feb. 12, 2001.

Chester Darling, Boston, MA, for Plaintiffs.

John C. Mihos, George S. Markopoulos, Assistant City Solicitor, Lynn, John R. Hitt, Attorney Generals Office, Government Bureau, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

GERTNER, District Judge.

The plaintiffs, five parents of students residing in Lynn, Massachusetts, challenge the validity of Lynn's Voluntary Plan for School Improvement and the Elimination of Racial Isolation ("the Plan") and the Massachusetts Racial Imbalance Act as violating the constitutions of the United States and Massachusetts, as well as various federal and state statutory provisions.

The defendants are the Commonwealth of Massachusetts, the City of Lynn, the Lynn School Committee, and the following local Lynn officials who are sued in their official capacities only: the Mayor of Lynn, the Superintendent of the Lynn Public Schools, and each member of the Lynn School Committee.

The Commonwealth of Massachusetts now moves to dismiss the First Amended Complaint on the grounds that the plaintiffs lack standing to continue to prosecute this case, the plaintiffs fail to state a claim upon which relief can be granted in challenging the validity of the Racial Imbalance Act, the plaintiffs' claims against the Commonwealth are barred by the Eleventh Amendment of the United States Constitution, and the Commonwealth is neither a "person" under 42 U.S.C. § 1983 nor a "program or activity" for purposes of liability under Title VI of the Civil Rights Act.[1] For the reasons stated below, the Commonwealth's Motion to Dismiss [docket entry # 72] is **GRANTED.**

■ It is now axiomatic that the Eleventh Amendment immunizes an unconsenting state from suits brought in federal courts by her own citizens.[2] *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842, (1890). However, when they make their intention "unmistakably" clear in the language of the statute, Congress may abrogate the states' constitutionally secured immunity for suits in federal court brought pursuant to Section Five of the Fourteenth Amendment. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Atascadero,* 473 U.S. at 242, 105 S.Ct. 3142.

■ Of the causes of action brought by the plaintiffs against the Commonwealth, Congress has clearly abrogated state sovereign immunity only for suits brought under Title VI of the Federal Civil Rights Statute, 42 U.S.C. § 2000d.[3] Nevertheless, I agree with the Commonwealth that a state is not a "program or activity" for purposes of Title VI liability.

42 U.S.C. § 2000d provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject-

1. The plaintiffs name the Commonwealth in the following causes of action: Count III (for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that the Commonwealth violated the plaintiffs' Equal Protection rights as guaranteed by the Fourteenth Amendment of the United States Constitution); Count V (Violation of 42 U.S.C. §§ 1981 and 1983); Count VII (Violation of Title VI of the Federal Civil Rights Statute, 42 U.S.C. § 2000(d)); and, Count IX (for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that the Commonwealth violated Article 111 of the Amendments to the Massachusetts Declaration of Rights).

2. There is no dispute that the Commonwealth has not consented to be sued in this action or waived its defenses of sovereign immunity. The Commonwealth expressly preserved its Eleventh Amendment defenses, both in its Motion to Intervene as a Party Defendant and in its Answer to the plaintiffs' First Amended Complaint. As for implied waiver, it arises only "by such overwhelming implication ... as [will] leave no room for any other reasonable construction." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239, 105 S.Ct. 3142,

87 L.Ed.2d 171 (1985). In this action, the Commonwealth intervened under Section 2403(b) to defend the constitutionality of the Massachusetts Racial Imbalance Act. Under 28 U.S.C. § 2403(b), this focused intervention *is limited to "presentation of evidence"* and "argument on the questions of constitutionality," and does not unmistakably evidence an intent by the Commonwealth to subject itself in federal court to the entire gamut of the plaintiffs' state and federal claims. *E.g. Tennessee v. Garner,* 471 U.S. 1, 22, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (the state of Tennessee was not subject to liability despite the case being dismissed as to all the individual defendants, because the state was only a party by virtue of 28 U.S.C. § 2403(b)). Plainly, the Commonwealth has not waived its sovereign immunity defenses by implication.

3. Congress has provided: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of ... Title VI of the Civil Rights Act of 1964." 42 U.S.C. § 2000d-7(a)(1).

ed to discrimination under any *program or activity* receiving Federal financial assistance. (emphasis added).

The landscape of Title VI changed in 1988 when Congress passed the Civil Rights Restoration Act of 1987, Pub.L. No. 100–259. The modified statute incorporated a broader concept of "program or activity" to include all of the operations of a federally funded institution that conducted the program or activity.[4] However, it did not so broadly extend Title VI to include the state itself. *E.g. Association of Mexican–American Educators v. State of Cal.*, 195 F.3d 465 (9th Cir.1999), *rev'd in part on other grounds*, 231 F.3d 572 (9th Cir. 2000) (en banc) (state itself cannot be considered a "program or activity" as defined in Title VI); *cf. Hodges by Hodges v. Public Bldg. Com'n of Chicago*, 864 F.Supp. 1493, 1505 (N.D.Ill.1994) (The City of Chicago is a municipality and, as such, it does not fit within the definition of "program or activity" for purposes of Title VI).

■ Likewise, plaintiffs' other causes of actions are barred by the Eleventh Amendment. Count V is barred because Congress has not abrogated sovereign immunity as a defense to claims under 42 U.S.C. §§ 1981 and 1983.[5] *E.g. Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (42 U.S.C. § 1983 does not by explicit and clear language indicate an intent to abrogate the Eleventh Amendment immunity of the states);

*Chinn v. City University of New York School of Law at Queens College*, 963 F.Supp. 218 (E.D.N.Y.1997) (States' Eleventh Amendment immunity is not abrogated by § 1981); *Chacko v. Texas A & M University*, 960 F.Supp. 1180 (S.D.Tex. 1997) (Texas A & M University, as an alter ego of the State of Texas, is entitled to Eleventh Amendment immunity from suit in federal court under § 1981); *Davis v. Buffalo Psychiatric Center*, 623 F.Supp. 19 (W.D.N.Y.1985) (State and its agencies were immune, absent waiver of Eleventh Amendment immunity, from suit brought in federal court under § 1981).

■ Sovereign immunity also bars Counts III and IX (for Declaratory Relief under 28 U.S.C. §§ 2201 and 2202) because those actions do not arise under Congress' valid exercise of its Fourteenth Amendment Enforcement Clause power. The scope of the Section 5 grant of power· extends to legislation that is "adapted to carry out the objects the amendments have in view, whatever tends to enforce submission to the prohibitions they contain, and to secure to all persons the enjoyment of perfect equality of civil rights and the equal protection of the laws against State denial or invasion." *Ex parte Virginia*, 100 U.S. 339, 345–346, 25 L.Ed. 676 (1879). *See also Katzenbach v. Morgan*, 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966) (Section 5 is a positive grant of legislative power authorizing

---

**4.** Prior to 1988, Title VI applied only to the specific programs that received federal funds. Section 2000d–4a now includes within the definition of "program or activity" the operations of departments and agencies of the state, state or local entities that distribute such assistance, colleges, universities, or other postsecondary institutions, local educational agencies, certain corporations or private organizations, and comparable facilities to which Federal financial assistance is extended.

**5.** For purposes of clarity, I note also that plaintiffs' cause of action under § 1981 has no application in this action. 42 U.S.C. section 1981 forbids discrimination in making and enforcing contracts. *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363,

105 L.Ed.2d 132 (1989). Though in *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), the Supreme Court held that § 1981 prohibits private schools from excluding children who are qualified for admission, solely on the basis of race, nothing in this case involves the making and enforcement of *private* contracts. Where an alleged act of discrimination does not involve the impairment of one of the specific rights under § 1981, the statute provides no relief. *Runyon*, 427 U.S. at 176, 96 S.Ct. 2586.

Furthermore, actions under 42 U.S.C. § 1983 do not lie against a state because they are not considered "persons" for purposes of the statute. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)

Congress to determine what legislation is needed to secure the guarantees of the Fourteenth Amendment).

In passing the Declaratory Judgment Act of 1934,[6] however, Congress acted pursuant to powers delegated to it by the judiciary clause of the United States Constitution, Article 3, Section 2.[7] This provision vests in Congress the legislative authority to determine the particular method by which the judicial power may be invoked, including defining the scope of remedies and procedures appropriate to proceedings deemed "cases" and "controversies" for constitutional purposes. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Plainly, then, by creating additional procedural remedies for actions over which federal courts already retain jurisdiction rather than enforcing substantive equal protection and due process protections, 28 U.S.C. §§ 2201 and 2202 do not derive from Section 5 of the Fourteenth Amendment. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (the Declaratory Judgment Act falls within the ambit of the judiciary clause, "so far as it authorizes relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends"). Consequently, the plaintiffs' claims against the Commonwealth for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 are barred by the Eleventh Amendment.

---

6. The Declaratory Judgment Act of 1934 is codified at 28 U.S.C. §§ 2201 and 2202.

7. Article 3, Section 2, provides: "the judicial power shall extend to all cases, in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made, under their authority ... to controversies between two or more states; between a state and citizens of another state; between citizens of different states; between citizens of the same state claiming lands under grants of different states; and between a state, or the citizens thereof, and foreign states, citizens, or subjects."

Accordingly, the Commonwealth's Motion to Dismiss [docket entry # 72] is hereby **GRANTED.**[8] The Commonwealth remains a party-defendant to this action under 28 U.S.C. § 2403(b) in the limited capacity to defend the validity and enforceability of the state Racial Imbalance Law, M.G.L. c. 71, § 37D.

**SO ORDERED.**

---

8. I note in conclusion that plaintiffs' reliance on *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) as an exception to sovereign immunity is misplaced. The *Ex Parte Young* doctrine has no bearing when, as here, the claims are brought directly against a state rather than against a state officer. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 277–80, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (the *Ex parte Young* doctrine removes the Eleventh Amendment bar where the private suit is directed not against the state or a state agency but instead against *state officials* acting in violation of federal law and where retrospective damages are not sought for official acts).