Dennis J. KISH, Plaintiff,

v.

MICHIGAN STATE BOARD OF LAW EXAMINERS, Defendant.

No. 97–CV–71342–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 31, 1998.

Hugh M. Davis, Jr., Detroit, MI, for Plaintiff.

Mark Donnelly, Lansing, MI, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

ROSEN, District Judge.

### I. INTRODUCTION

Plaintiff Dennis J. Kish filed a Complaint for Declaratory and Injunctive Relief against Defendant, Michigan State Board of Law Examiners (referred to herein as the "State Bar" or the "Board") maintaining that the State Bar's interpretation of the residency requirement and resulting refusal to admit him to practice in Michigan constitutes an ongoing violation of the Equal Protection Clause of the Fourteenth Amendment. He seeks an injunctive order that would compel the State Bar to admit him to practice. The disputed provision provides, "A person is qualified for admission to the bar of this state who ... is a resident of 1 of the states or territories or the District of Columbia ...." M.C.L.A. § 600.934 (West 1996).

In response to Plaintiff's Complaint, the Defendant filed a Fed.R.Civ.Pro. 12(b) Motion to Dismiss, arguing that, as a State agency, the State Bar is protected by Eleventh Amendment immunity. Alternatively, the Board argues that even if it is not immune from suit, this Court lacks jurisdiction to adjudicate Plaintiff's claims under the rule enunciated by the U.S. Supreme Court in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

After hearing the oral arguments of counsel on this matter, the Court ordered the parties to provide supplemental briefing on two additional issues: (1) the effect of the Supreme Court's recent decision in *Idaho v. Coeur d'Alene Tribe of Idaho,* —— U.S. ——, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) on Defendant's Eleventh Amendment immunity argument and (2) the applicability of the abstention doctrine established by the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (referred to herein as "*Younger* abstention"). The parties have supplied the Court with the requested supplemental briefs.

Having reviewed and considered the parties briefs and the oral arguments of counsel, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

### II. FACTUAL BACKGROUND

Plaintiff Dennis J. Kish, a Canadian citizen, entered law school in the United States in the fall of 1992 at the Detroit College of Law. Throughout his time at law school, Kish maintained a permanent residence in Windsor, Ontario, Canada, and held an F–1 student visa, issued by the Immigration and Naturalization Service (INS), pursuant to 8 U.S.C. § 1101(a)(15)(F)(i). After graduating from law school in June of 1996, Kish took the Michigan Bar Exam in July of that year.

In a letter dated August 15, 1996, the Michigan State Board of Law Examiners notified Kish that he would not be admitted to practice law in the State of Michigan until he presented to the State Bar satisfactory proof that he had become a resident of a state, district, or territory of the United States. Kish later received unofficial results of the July 1996 bar exam in a letter dated October 30, 1996, advising him that he had earned a passing score of 155. However, the letter also stated that the results would not be certified until Kish became a resident of a state, district, or territory of the United States.

In September of 1996 the INS gave Kish limited authorization to maintain employment in the United States. This limited employment authorization was actually an extension of Kish's non-immigrant student visa allow-

ing Kish to obtain "practical training" in his field of study. This visa and the limited employment authorization was scheduled to expire in August of 1997.

Subsequently, in response to the Michigan Bar's residency requirement, Kish rented an apartment in Birmingham, Michigan, and moved in on February 7, 1997. On February 19, 1997 Kish sent a letter to the Michigan Bar Examiners informing them that he had moved to Michigan and, once the State Bar was satisfied that he had met its residency requirement, he planned to accept a job offer with Boren and Firebaugh, a Detroit law firm.

On February 28, 1997, the Bar Examiners responded to Kish's letter, stating that they interpreted the residency requirement of M.C.L.A. § 600.934 as requiring permanent United States residency documented by way of a non-immigrant working permanent resident visa (i.e., a "green card").

Kish contends that a green card is difficult to obtain and involves a time-consuming process. He further claims that he will be unable to accept the job offer with Boren and Firebaugh if he is not admitted to the Bar within a reasonable time as his visa was scheduled to expire in August of 1997, which would force him to leave the United States and to forego the job in Detroit. He contends that a Bar membership would allow him to obtain a professional visa under Chapter 16 of the North American Free Trade Agreement (NAFTA).

In his Complaint for Declaratory and Injunctive Relief against the Michigan State Board of Law Examiners, Kish claims that the State Bar's interpretation of the residency requirement and resulting refusal to admit him to bar membership constitutes an ongoing violation of the Equal Protection Clause of the Fourteenth Amendment. He seeks an injunctive order commanding the Board of Law Examiners to admit him to the Michigan bar.

In response to Plaintiff's Complaint, the Defendant Board of Law Examiners moved for dismissal pursuant to Fed.R.Civ.Pro. 12(b)(1) and (6) arguing that (1) the Eleventh Amendment provides the Michigan Board of Law Examiners with immunity from suit; and (2) regardless of whether Eleventh Amendment immunity applies, under well-established abstention doctrines, this Court lacks jurisdiction over Plaintiff's action.

## III. DISCUSSION

### A. ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment to the Constitution states,

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state.

U.S. Const., amend. XI.

The Constitution thus grants to the states as sovereign entities immunity from non-consensual legal action in federal court. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996). It is this immunity from adverse legal action in federal court that the state bar seeks to invoke in this case.

The foundation of the State Bar's immunity argument lies within Michigan state law. The Michigan State Board of Law Examiners is a judicial agency of the State of Michigan, which is subject to the supervision of the Michigan Supreme Court. *See Scullion v. State Board of Law Examiners,* 102 Mich. App. 711, 714, 302 N.W.2d 290, 291–92 (1981). The Board is designed to assist the Supreme Court in its statutorily-granted power over the membership of the State Bar. *Id.* By statute, Michigan law provides that

The [Michigan] Supreme Court has the power to provide for the organization, government, and membership of the State Bar of Michigan, and to adopt rules and regulations concerning the conduct and activities of the State Bar of Michigan and its members, the schedule of membership dues therein, the discipline, suspension, and disbarment of its members for misconduct, and *the investigation and examination of applicants for admission to the bar.*

**962**

M.C.L.A. § 600.904 (West 1996) (emphasis added). *See also, Johnson v. DiGiovanni,* 347 Mich. 118, 127, 78 N.W.2d 560, 565 (1956) (it is the inherent power of the state supreme court to regulate legal practice in the state by means of the state bar); *Ayres v. Hadaway,* 303 Mich. 589, 597, 6 N.W.2d 905, 908 (1942).

■ It is well-settled that the regulatory control that a state may exercise over bar members is autonomous. *See Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). That is, the jurisdiction by which a state may regulate the practice of law is exclusive to that state. *See Ginger v. Circuit Court for the County of Wayne,* 372 F.2d 621, 625 (6th Cir.1967). What follows from this state autonomy is a general deference by federal courts to state courts concerning methods by which to regulate the state bar, *see Selling v. Radford,* 243 U.S. 46, 50–51, 37 S.Ct. 377, 61 L.Ed. 585 (1917), for this matter lies exclusively within the province of the state. *See Saier v. State Bar of Michigan,* 293 F.2d 756, 759, 759–60 (6th Cir.1961). Thus, it is clear that the Michigan State Supreme Court holds some degree of sovereignty with regard to matters concerning the State Bar.

■ The common-law concept of immunity relates to sovereignty, and the scope of this sovereign immunity is quite expansive. *See Gorka by Gorka v. Sullivan,* 82 F.3d 772, 774 (7th Cir.1996) (citing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). It immunizes not only the state, but also the various departments and agencies of a state. *See Thiokol Corporation v. Department of Treasury, State of Michigan, Revenue Division,* 987

F.2d 376, 381–82 (6th Cir.1993). It also extends to individual defendants acting in their official capacities. *Hafer v. Melo,* 502 U.S. 21, 24–25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991) (holding that a defendant official acting in his official capacity receives the same immunity as the government agency to which he belongs).

■ Where state law characterizes an entity as a state agency, the Eleventh Amendment will protect the entity with immunity. Citing the control and ultimate authority that the State Supreme Court holds over the State Bar, which, as discussed above, is clearly the case with in Michigan, the Seventh Circuit held that the Wisconsin State Bar is immune from suit under the Eleventh Amendment. *See Thiel v. State Bar of Wisconsin,* 94 F.3d 399, 402–403 (7th Cir.1996).[1]

■ As the above discussion suggests, however, the Supreme Court has recognized an exception to Eleventh Amendment immunity. In *Ex parte Young* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Court held that immunity does not protect a state official acting in an official capacity from suit for injunctive or declaratory relief. *See Ex parte Young,* 209 U.S. at 159–60. Immunity does not extend to actions for *prospective* declaratory relief against state officials concerning[2] an *ongoing* federal violation, as opposed to a past violation. *Id. See also, Los Angeles County Bar Association v. Eu,* 979 F.2d 697, 704 (9th Cir.1992). It is this "prospective declaratory/injunctive relief" exception upon which the court in *Thiel* relied in permitting that action to go forward with respect to the individual state bar board of governor members after dismissing the state bar itself and it is upon this exception that

1. As discussed, infra, the *Thiel* court applied the "prospective injunctive relief" exception to Eleventh Amendment immunity and allowed the suit to go forward as against the individual members of the Wisconsin Bar's Board of Governors. However, the "prospective injunctive relief" exception relied upon by the *Thiel* court has recently been substantially narrowed by the United States Supreme Court in *Idaho v. Coeur d'Alene Tribe of Idaho,*—— U.S. ——, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), and it is doubtful that under this recent Supreme Court decision the Seventh Circuit would have permitted the *Thiel* case to go forward as against the individual defendants.

2. Following the Defendant's filing of its Motion to Dismiss, Kish apparently realized that his lawsuit against the State Bar would undoubtedly be barred by Eleventh Amendment immunity. Therefore, he has now filed a Motion to Amend his Complaint, to add as party defendants, the individual members of the Board of Law Examiners. However, as discussed *infra*, this proposed amendment would not save Plaintiff's Complaint from dismissal.

Kish relies in his argument in this case against immunity.

The Supreme Court recently addressed the "proper scope and application" of the *Young* exception in *Idaho v. Coeur d'Alene Tribe of Idaho*, ___ U.S. ___, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). Although the continued validity of *Young* was not questioned, the Court cautioned that "application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction." *Id.* 117 S.Ct. at 2034. Justice Kennedy, writing for the majority, emphasized that *Young* must be interpreted consistently with the "real interests served by the Eleventh Amendment.":

> To interpret *Young* to permit a federal court-action in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle reaffirmed just last Term in *Seminole Tribe* [*of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)], that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading. Application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction.

*Id.*

 The *Coeur d'Alene* Court noted that there are two instances in which the *Young* exception may serve an important purpose. The first is where there is no available state forum. ___ U.S. at ___ ___ ___, 117 S.Ct. at 2035–36. However, this is not the case here as Plaintiff Kish has a right to have his complaint heard and decided by the Michigan Supreme Court. M.C.R. 7.304(A) provides:

> A complaint may be filed in the Supreme Court to implement the Court's superintending control power .... A complaint for mandamus may be filed to implement

the Court's superintending control power over the **Board of Law Examiners**, the Attorney Discipline Board, or the Attorney Grievance Commission.

A second instance in which *Young* may serve an important purpose is when the case calls for the interpretation of federal law. *Coeur d'Alene, supra,* ___ U.S. at ___, 117 S.Ct. at 2036. However, as the Supreme Court noted, this second reason often leads to a too "expansive application of the *Young* exception." *Id.* The Court stated:

> Assuming the availability of a state forum with the authority and procedures adequate for the effective vindication of federal law, due process concerns would not be implicated by having state tribunals resolve federal question cases... While we can assume there is a special role for Article III courts...we do not for that reason conclude that state courts are a less than adequate forum for resolving federal questions. A doctrine based on the inherent inadequacy of state forums would run counter to basic principles of federalism. In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), we expressed our "emphatic reaffirmation ... of the constitutional obligation of the state courts to uphold federal law, and [our] expression of confidence in their ability to do so...."

Interpretation of federal law is the proprietary concern of state, as well as federal, courts. It is the right and duty of the States, within their own judiciaries, to interpret and to follow the Constitution and all laws enacted pursuant to it, subject to a litigant's right of review in this Court in a proper case. The Constitution and laws of the United States are not a body of law external to the States, acknowledged and enforced simply as a matter of comity. The Constitution is the basic law of the Nation, a law to which a State's ties are no less intimate than those of the National Government itself. The separate States and the Government of the United States are bound in the common cause of preserving the whole constitutional order. Federal and state law "together form one system of jurisprudence." ... It would be error coupled with irony were we to by pass the

Eleventh Amendment, which enacts a scheme solicitous of the States, on the sole rationale that state courts are inadequate to enforce and interpret federal rights in every case.

*Id.* 117 S.Ct. at 2037 (citations omitted)

The Court accurately reasoned that what is really at stake in cases where a state forum is available, such as in *Coeur d'Alene* and in this case, is the Plaintiff's desire to choose a particular forum versus the desire of the State to have the dispute resolved in its own courts. *Id.* 117 S.Ct. at 2038.

The State's interest in having the dispute resolved in its own courts thus becomes an important issue. As the *Coeur d'Alene* Court found, in such instances, a case-by-case approach balancing the state's interests against federal interests must be taken. *Id.* 117 S.Ct. at 2038–39. Using such an approach in *Coeur d'Alene,* the Court found the *Young* exception inapplicable because special state sovereignty issues were implicated, since the plaintiff's action—which was brought against the State of Idaho and a number of state elected and appointed officials—was in essence a quiet title action challenging the state's exercise of jurisdiction over its lands and waters. However, the Court was clear that its construction and application of *Young* was not to be limited to such land disputes. The Court instructed that "courts should consider whether there are 'special factors counseling hesitation'... before allowing a suit to proceed [under *Young*].... The range of concerns to be answered in answering this inquiry is broad." *Id.* 117 S.Ct. at 2039.

While it cannot be disputed that the facts of *Coeur d'Alene* are distinguishable from the facts in this action, the reasoning of the Court in that case is clearly applicable. Here, the State of Michigan's interest is in its right to govern, regulate and license the practice of law within its jurisdiction pursuant to those criteria it deems to be in the best interests of Michigan citizens and the Michigan legal profession. As the Supreme Court stated in *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975):

We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.... **The interest of the State in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been "officers of the courts."**

*Id.* 421 U.S. at 792. *Cf., In re Griffiths,* 413 U.S. 717, 723, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973).

The foregoing makes clear that the State of Michigan has a "special sovereignty interest" no less significant (and, perhaps, greater) than that of the State of Idaho in the *Coeur d'Alene* case. In this Court's view, this is precisely the type of action which the *Coeur d'Alene* Court reasoned offends the concepts of comity and federalism. Further, if after pursuing his action with the Michigan Supreme Court Plaintiff believes the Supreme Court did not adequately or appropriately adjudicate his federal constitutional claims, or is otherwise dissatisfied with the decision, he may petition the U.S. Supreme Court for *certiorari.*

Under these circumstances, the Court finds that the exception to Eleventh Amendment immunity established in *Ex parte Young* is not applicable, here. Accordingly, the Court finds that this federal court action against the Michigan Board of Law Examiners (as well as the individual members of the Board) must be dismissed by application of Eleventh Amendment immunity.[3]

---

**3.** The foregoing further dictates that Plaintiff's Motion for Leave to Amend his Complaint to add the individual members of the Board of Bar Examiners as party-defendants be denied because plaintiff's proposed amendment to his complaint would be futile because under the Supreme Court's construction of the *Young* exception in *Coeur d'Alene,* it is not the formalistic mechanics of the pleading that control, but rather the interests implicated. *See, Marx v. Centran Corp.,* 747 F.2d 1536, 1550 (6th Cir.1984) (where proposed amendment would be futile, the court

## B. *YOUNGER ABSTENTION*

Even if the Court were to find that this action were not barred by Eleventh Amendment immunity, the Court finds that dismissal of this action would be required under the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619, 625, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986) (determining that a ripe controversy existed between the parties but ruling that the district court should have abstained from adjudicating the case under *Younger v. Harris*). *See also, Kevorkian v. Thompson*, 947 F.Supp. 1152 (E.D.Mich.1997).

In *Younger*, the United States Supreme Court held that federal courts should not enjoin pending state criminal proceedings except in a "very unusual circumstance" where an injunction is necessary to prevent "both great and immediate" irreparable injury. *Id.*, 106 S.Ct. at 751. Grounded on principles of equity and on the "more vital consideration" of the concerns for comity and federalism, *id.* at 750, the *Younger* court found it "perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* 91 S.Ct. at 751 (italics omitted).

The Court explained that federal courts must be sensitive to "the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the states." *Id.* at 750. The *Younger* court found that the possible unconstitutionality of a statute does not justify an injunction against good faith efforts of the state to enforce it. *Id.* at 755.

*Younger* established the principle that in cases seeking to enjoin ongoing state proceedings—be they criminal, civil, or administrative—federal courts should not exercise jurisdiction but should instead dismiss the cases in their entirety. *See Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Ohio Civil Rights Commission v. Dayton Christian Schools, supra.* The abstention rule announced in *Younger* with respect to injunctive relief applies with equal force to requests for declaratory relief in federal courts. *See Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). *See also Younger, supra,* 91 S.Ct. at 749 n. 2.

In determining the applicability of the *Younger* abstention rule, the court should consider three factors: (1) whether there is a pending state judicial proceeding; (2) whether an adequate opportunity is provided to raise the constitutional claims in the state proceeding; and (3) whether the proceedings implicate important state interests. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

If a state action is pending when the federal complaint was filed, the federal action must be dismissed. *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). As indicated above, the Supreme Court has held that this rule applies not only to pending criminal prosecutions, but to civil proceedings in the aid of the criminal law, *Huffman, supra;* state civil contempt proceedings, *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); civil enforcement actions brought by the state, *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *or non-criminal proceedings when important state interests are involved,* Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Moreover, it is wellsettled that for *Younger* purposes, the state's "trial-and-appeals" process is treated as a unitary system, and until all appeals are exhausted, a state judicial proceeding is deemed to be pending. *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 369, 109 S.Ct. 2506,

does not abuse its discretion in denying leave to amend.)

2519, 105 L.Ed.2d 298 (1989) (*NOPSI* ). The *NOPSI* Court explained:

> For *Younger* purposes, the State's trial and appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the state as a sovereign. For the same reason, a party may not procure federal intervention by terminating the State judicial process prematurely—foregoing the State appeal to attack the trial court's judgment in federal court. "[A] necessary concomitant of *Younger* is that a party [wishing to contest in federal court a decision of a State judicial tribunal] must exhaust his State appellate remedies before seeking relief in the [Federal] Court."

*Id.* (citations omitted).

 Turning then to the application of the three *Younger* factors, with respect to the first factor—whether there is a pending state "judicial" proceeding—the `Supreme Court has stated that "[a] judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *New Orleans Public Service, Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 370, 109 S.Ct. 2506, 2520, 105 L.Ed.2d 298 (1989) (*NOPSI* ). Under this standard, the Sixth Circuit has held that the Michigan State Bar's enforcement of the Bar's Rules of Professional Conduct constitutes an adjudicative, rather than legislative, function. Such a function satisfies the first element of the *Younger* test of application. *Fieger v. Thomas,* 74 F.3d 740, 744 (6th Cir.1996).

 While the State Bar in this case is not attempting to enforce its Rules of Professional Conduct, it is seeking to enforce its interpretation of its residency requirement, an equally important state interest. This enforcement suggests an adjudicative function similar to the function of the Attorney Grievance Board which the *Fieger* court addressed. *See Scullion v. State Board of Law Examiners, supra,* 302 N.W.2d at 293 (finding that the Michigan Bar's Board of Law Examiners exercises the same judicial function as the Attorney Discipline Board and the Attorney Grievance Board). Moreover, even

if the proceeding before the Board of Law Examiners were deemed not to be adjudicative, the U.S. Supreme Court has held that *Younger* abstention applies to "state administrative proceedings in which important state interests are vindicated" where, in the course of those proceedings, either at the agency level or at the judicial review level, "the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Ohio Civil Rights Commission v. Dayton Christian Schools,* 477 U.S. 619, 629, 106 S.Ct. 2718, 2724, 91 L.Ed.2d 512 (1986). *See also, GTE Mobilnet of Ohio v. Johnson,* 111 F.3d 469 (6th Cir.1997). Thus, even if the State Bar decision here were deemed to be an administrative, rather than an adjudicative, decision, so long as state-court judicial review of the State Bar decision is available, *Younger* abstention still would apply. *Fieger v. Thomas,* 74 F.3d 740, 745 (6th Cir.1996).

The application of these principles establishes that first requirement of the *Younger* doctrine is satisfied in this case. Here, the Board of Law Examiner's determination to deny Plaintiff admission to the bar clearly constitutes an adjudicative proceeding. The Board applied the facts concerning Kish's residence which were supplied by Plaintiff to the statutory scheme of bar admission requirements, M.C.L. § 600.934. While Plaintiff's right to petition the Supreme Court to exercise superintending control over the Board is not structured as a classic "appeal", the relationship between a Board of Law Examiners' determination and the Michigan Supreme Court is such that it clearly falls within the same parameters. Indeed, in this Court's view, the relationship between the Board and the Michigan Supreme Court creates an even tighter unitary process than the hearing and appeal process considered by the Supreme Court in the *NOPSI* case.

The foregoing discussion also establishes that the second element of the *Younger* test of application—whether important state interests are at stake—is satisfied. As discussed above, admission to the State Bar, as governed by the State Supreme Court, is a matter of significant interest to the state, as both statutory and case law suggest. *See* M.C.L.A. § 600.904; *In re Griffiths, supra;*

*Goldfarb v. Virginia State Bar, supra.* See also, *Fieger v. Thomas,* 74 F.3d 740, 745 (6th Cir.1996).

 The third requirement for *Younger* abstention—that there be an adequate opportunity in state proceedings to raise constitutional challenges—is also satisfied in this case. The State Board of Law Examiners Rule 7 provides that "an applicant [who is found not to meet the requirements for admission to the Bar] may ask the Board to waive any requirements except the payment of fees. The applicant must demonstrate why the request should be granted." SBLE Rule 7. There is nothing in the record to establish that Plaintiff ever requested a waiver of the residency requirement from the Board of Law Examiners. Once an aggrieved Bar applicant has exhausted this avenue for "reconsideration" before the Board, he may seek reversal of the Board's decision by filing a complaint for mandamus in the Michigan Supreme Court to implement the State Supreme Court's superintending control power of the Board of Law Examiners. *See* MCR 7.304(A). *See also, Scullion v. Michigan State Board of Law Examiners, supra.* Review of the State court's decision may be had by way of a petition for writ of *certiorari* to the United States Supreme Court. *Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

 There is no limitation at any stage of the above-described "trial-and-appeals" proceeding concerning decisions of the Board of Law Examiners precluding Plaintiff from raising his constitutional challenge. Indeed, it would seem that Plaintiff could initially raise these federal constitutional issues in the context of a request for waiver to the Board under SBLE Rule 7, and if he is unsuccessful, he could then raise the issues in his complaint for mandamus with the Michigan Supreme Court. It is only when state law

clearly precludes the interposition of the federal constitutional claim that *Younger* abstention is inappropriate. *See Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). The burden rests upon the federal plaintiff to show that state procedure bars the interposition of the constitutional claims. *See Pennzoil Company v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987).

 Other than conclusorily asserting that he lacks an adequate remedy at law, Plaintiff has not met this burden in this case. Plaintiff claims a violation of federally-protected rights as embodied in the Equal Protection Clause of the Fourteenth Amendment, but has failed to articulate a reason why the State court could not resolve this conflict. Indeed, with respect to determinations of the Michigan State Board of Law Examiners and the right to appeal such determinations via a complaint for mandamus before the Michigan Supreme Court, constitutional challenges, such as the one advanced here, may be raised before the Supreme Court at the mandamus/superintending control stage. *See In re Houlahan,* 389 Mich. 665, 209 N.W.2d 250 (1973) (petitioner, a resident alien, who was denied admission to state bar raised equal protection challenge in mandamus proceeding challenging the state bar's former U.S. citizenship requirement). Thus, the third requirement of *Younger* is met.[4]

 Once a court determines that the requirements for *Younger* abstention are met in a given case, generally the plaintiff's claims will be dismissed unless the plaintiff can show that one of the exceptions applies. Federal courts will hear a case in which *Younger* applies only in "extraordinary circumstances," such as official harassment and bad faith. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971); *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 2292–93, 45 L.Ed.2d 223 (1975). There

4. To the extent that in addition to his Constitutional equal protection challenge Plaintiff is alleging a violation of the North American Free Trade Agreement ("NAFTA"), it is well settled that, just as with cases arising under the United States Constitution, state courts exercise concurrent jurisdiction with the federal courts in cases arising under U.S. treaties. *See Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 508, 82 S.Ct. 519, 523, 7 L.Ed.2d 483 (1962). Plaintiff clearly can raise any argument concerning a violation of NAFTA in the state court.

is no evidence here that would support this type of claim in this case, nor does Plaintiff invoke such an assertion.

For the forgoing reasons, the Court finds that the *Younger* abstention doctrine applies here, and therefore, the case will be dismissed.

## CONCLUSION

Based upon all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss be, and hereby is, GRANTED. Accordingly,

IT IS FURTHER ORDERED that this case be, and hereby is, DISMISSED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Amend his Complaint is DENIED.

Let Judgment be entered accordingly.