**AMERITECH CORPORATION, Plaintiff,**

v.

**E. Michael McCANN, in his official capacity as District Attorney of Milwaukee County, Wisconsin, Defendants.**

No. 99–C–675.

United States District Court, E.D. Wisconsin.

Dec. 17, 2001.

---

Stephen J. Liccione, Ameritech, Stephen M. Glynn, Glynn Fitzgerald & Albee, Milwaukee, WI, for Plaintiff.

Mary Woolsey Schlaefer, Donald V. Latorraca, Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, for Defendant.

## DECISION AND ORDER

RANDA, District Judge.

This declaratory judgment action under 28 U.S.C. § 2201 "(Section 2201)" comes

before the Court on a motion to dismiss by the defendant, E. Michael McCann ("McCann"). The defendant is the District Attorney for Milwaukee County. It is undisputed that his office is a prosecutorial unit of the State of Wisconsin. Wis. Stat. § 978.01(1). The plaintiff, Ameritech Corporation ("Ameritech"), is a telecommunications firm. From time to time, pursuant to subpoena, Ameritech provides the defendant with data concerning incoming telephone calls directed to designated telephone numbers. In this lawsuit, Ameritech seeks a declaration that it is entitled to reimbursement, under 18 U.S.C. § 2706 ("Section 2706"), for the costs associated with providing such information. Subsection (b) of Section 2706 purports to allow the recovery of such expenses in state court. The Court concludes that this declaratory judgment action is barred by Wisconsin's sovereign immunity and that it does not fall within the exception recognized in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Alternatively, the Court is unable to grant declaratory relief in favor of Ameritech because the plaintiff seeks a "right to reimbursement" in state court that would likewise be barred by Wisconsin's sovereign immunity. Accordingly, the Court grants the defendant's motion and dismisses the complaint.

## BACKGROUND

In the course of investigating criminal activity, McCann's office occasionally obtains subpoenas directed to Ameritech for the production of data concerning incoming calls to designated phone numbers. Complaint, ¶ 5. According to Ameritech, compliance with these orders requires the compilation of information in the form of

"automated message accounting studies" ("AMA studies") that would not otherwise be prepared by the company. *Id.*

Ameritech gave notice to the Wisconsin law enforcement community that effective March 1, 1999, it would be seeking reimbursement of its reasonable costs for the production of AMA studies pursuant to Section 2706, which Congress enacted as part of the Electronic Communications Privacy Act of 1986 ("ECPA"). Complaint, ¶ 9. Section 2706 provides, in part, as follows:

> (a) **Payment.**—Except as otherwise provided in subsection (c), a governmental entity obtaining the contents of communications, records, or other information under section 2702, 2703, or 2704 of this title shall pay to the person or entity assembling or providing such information a fee for reimbursement for such costs as are reasonably necessary and which have been directly incurred in searching for, assembling, reproducing or otherwise providing such information. Such reimbursable costs shall include any costs due to necessary disruption of normal operations of any electronic communication service or remote computing service in which such information may be stored.
>
> (b) **Amount.**—The amount of the fee provided by subsection (a) shall be as mutually agreed by the governmental entity and the person or entity providing the information, or, in the absence of agreement, shall be as determined by the court which issued the order for the production of such information (or the court before which a criminal prosecution relating to such information would be brought, if no court order was issued for production of the information).

18 U.S.C. § 2706.[1] McCann, relying upon Wisconsin law, informed Ameritech that

---

1. This lawsuit does not allege that Ameritech has a right to reimbursement with respect to

"toll records and subscriber information"

his office did not recognize Ameritech's right to be reimbursed and did not intend to pay. Complaint ¶ 11. According to Ameritech, Wisconsin's state law enforcement agencies are the only such agencies in the country to have "resisted payment of statutory reimbursement." *Id.,* ¶ 13.

On June 17, 1999, Ameritech filed this lawsuit against McCann, in his official capacity as District Attorney. The complaint seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Specifically, Ameritech requests a declaration that "under 18 U.S.C. § 2706(a), it has a right to reimbursement for such costs as are reasonably necessary and which have been directly incurred in searching for, assembling, reproducing, or otherwise producing AMA studies in response to subpoenas and court orders." Complaint, ¶ 16. Ameritech's complaint does not reference the enforcement mechanism set forth in subsection (b) of Section 2706. Furthermore, at least as far as the Court is aware, Ameritech has not pursued its "right to reimbursement" in the court(s) that issued the subpoenas for the AMA studies.

Answering the complaint, McCann asserted various affirmative defenses, including lack of subject matter jurisdiction, failure to state a claim upon which relief could be granted, and defenses based on the Tenth and Eleventh Amendments to the United States Constitution. Subsequently, McCann filed a motion to dismiss.[2] The Court, in a written opinion, found that an actual case or controversy existed concerning the meaning of a federal statute. Accordingly, the Court denied McCann's motion to the extent it asserted lack of subject matter jurisdiction. However, the Court postponed a final decision on the motion to dismiss and ordered supplemental briefing on two questions: (1) whether Section 2706 "may constitutionally be applied to a state agency," especially in light of the Tenth Amendment, and (2) whether Section 2706 preempts state law.

In its previous opinion, the Court suggested in a footnote that it would not grant McCann's motion to dismiss on the basis of the Eleventh Amendment. Decision and Order of July 20, 2000, p. 10 n. 3.[3] However, the Court's subsequent research, aided by the supplemental briefing of the parties, has persuaded the Court that state sovereign immunity poses insurmountable obstacles to the declaratory relief sought by Ameritech. Not only does sovereign immunity bar *this* declaratory judgment action, it would also bar any action in state court seeking monetary relief from the defendant. In other words, even if this action could proceed, the Court would be unable to grant the relief sought by Ameritech, *i.e.,* a declaration that the plaintiff has "right to reimbursement" *capable of enforcement in state court.*

## ANALYSIS

### I. Standard Governing Motions to Dismiss

In ruling on a motion under Rule 12(b)(6), the Court accepts as true all of the well-pleaded factual allegations in the plaintiff's complaint and draws all reasonable inferences in favor of the plaintiff.

---

covered by subsection (c) of Section 2706. Compare *Michigan Bell Telephone Co. v. Drug Enforcement Administration,* 693 F.Supp. 542 (E.D.Mich.1988).

**2.** Ameritech filed a motion for summary judgment on August 30, 1999. The motion was withdrawn on January 18, 2000.

**3.** It is too strong to say that the Court "rejected" the Eleventh Amendment as a basis for dismissal, as Ameritech now claims. Ameritech's Reply to Defendant's Supplemental Brief In Support of His Motion To Dismiss, p. 4.

*Tobin for Governor v. Illinois State Bd. of Elections,* 268 F.3d 517, 521 (7th Cir.2001). Dismissal is proper only if it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle it to relief. *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## II. Scope of Declaratory Relief Sought By Ameritech

Before discussing the sovereign immunity issues in this case, the Court addresses the scope of the declaratory relief sought by Ameritech. On its face, Ameritech's complaint is confined to subsection (a) of Section 2706, which states in relevant part that a "governmental entity obtaining the contents of communications, records or other information ... shall pay to the person or entity assembling or providing such information a fee for reimbursement for such costs as are reasonably necessary and which have been directly incurred in searching for, assembling, reproducing or otherwise providing such information." 18 U.S.C. § 2706(a). In asking this Court to recognize a statutory "right to reimbursement," however, Ameritech implicitly asks this Court to endorse the enforcement mechanism set forth in subsection (b), which allows a telecommunications company to seek reimbursement in state court. Without the enforcement mechanism in subsection (b), the "right to reimbursement" created by subsection (a) is meaningless. Properly understood, therefore, the complaint in this action seeks a decla-

ration that Ameritech has a right to reimbursement that is *capable of enforcement in state court as provided in subsection (b).* At a minimum, Ameritech is attempting to obtain a declaratory judgment in federal court that will be *res judicata* in state court on the question of McCann's liability under subsection (a). See *Benning v. Board of Regents,* 928 F.2d 775, 778 (7th Cir.1991), discussed *infra.*

## III. Sovereign Immunity

### A. General Principles

■ "Although the Constitution establishes a National Government with broad, often plenary authority over matters within its recognized competence, the founding document 'specifically recognizes the States as sovereign entities.'" *Alden v. Maine,* 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (quoting *Seminole Tribe v. Florida,* 517 U.S. 44, 71, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). An important attribute of sovereignty is immunity from suit. Thus, under the Eleventh Amendment,[4] citizens may not bring suit against a State or any instrumentality thereof without the State's consent. *See* U.S. Const. amend. XI.; *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). In *Hans, supra,* the Supreme Court held that sovereign immunity shielded the States from federal suits by their own citizens. Some law review commentators and some courts regard this understanding of sovereign immunity as a "se-

---

**4.** The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amend. XI. The principle of state sovereign immunity derives, not solely from the Eleventh Amendment, but from the "structure of the original Constitution itself." *Alden,* 527 U.S. at 728, 119 S.Ct.

2240 (citing *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267–68, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). For purposes of this opinion, however, the Court will sometimes use the phrase "Eleventh Amendment" as shorthand for the "broader concept of immunity, implicit in the Constitution," that generally exempts States from private suits without their consent. *Id.* at 267, 117 S.Ct. 2028.

vere restriction on federal jurisdiction" that ought to be "circumvented" whenever possible. *Froebel v. Meyer,* 13 F.Supp.2d 843, 848–49 (E.D.Wis.1998), *aff'd,* 217 F.3d 928 (7th Cir.2000), *cert denied,* 531 U.S. 1075, 121 S.Ct. 769, 148 L.Ed.2d 669 (2001).[5] The Supreme Court takes a very different view of the matter, as *Alden* and the decisions cited below make clear.

It is difficult to overstate the importance of sovereign immunity for the generation that designed and adopted our federal system of government. As Justice Kennedy noted in *Alden,* the Framers considered immunity from private suits essential to the "sovereign dignity" of the States. 527 U.S. at 715, 119 S.Ct. 2240. Indeed, Alexander Hamilton, writing in Federalist No. 81, noted that it was the "general sense and the general practice of mankind" to recognize such immunity as an "attribute of sovereignty." THE FEDERALIST No. 81, pp. 487–488 (C. Rossiter ed.1961). At the birth of our nation, this "exemption" from suit was "enjoyed by the government of every State in the Union." *Id.* One scholar, referring to the relatively speedy passage of the Eleventh Amendment following the Supreme Court's decision in *Chisholm v. Georgia,* 2 U.S. 419, 2 Dall. 419, 1 L.Ed. 440 (1793), has noted that sovereign immunity "meant enough to our founding generation that they rose up to smite the Supreme Court when it had the audacity to permit suits against states." David Currie, Ex Parte Young *After* Seminole Tribe, 72 N.Y.U.L. REV. 547, 548 (June 1997).[6]

The principle of state sovereign immunity, far from being a dead letter, continues to be an important restraint upon the power of the national government. As the Court of Appeals for the Fourth Circuit recently noted, "[t]his limit on federal judicial power is an essential element of the constitutional design, as immunity accords the States the respect owed them as members of the federation and protects the States' ability to govern in accordance with the will of their citizens." *Bragg v. West Virginia Coal Ass'n,* 248 F.3d 275, 291 (4th Cir.2001) (quotations omitted). The vitality of the principle of sovereign immunity is underscored when one considers the very limited situations in which Congress may abrogate that immunity. It is "inescapably clear," for example, that "Congress may not abrogate Eleventh Amendment immunity through the exercise of its Article I powers." *MCI Telecommunications Corp. v. Illinois Bell Telephone Co.,* 222 F.3d 323, 338 (7th Cir. 2000), *cert. denied sub nom. Public Service Com'n of Wisconsin v. Wisconsin Bell,* 531 U.S. 1132, 121 S.Ct. 896, 148 L.Ed.2d 802 (2001) (citing *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 672, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank,* 527 U.S. 627, 636, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *Seminole Tribe,* 517 U.S. at 72 116 S.Ct. 1114); *see also Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 364, 121 S.Ct. 955, 148 L.Ed.2d

---

**5.** The defendants in *Froebel* apparently did not appeal the district court's determination that the action was a proper application of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), discussed *infra.* Hence, there is no discussion of sovereign immunity in the *Seventh Circuit's* decision in the matter.

**6.** Sovereign immunity sometimes dictates an outcome that seems unfair or even "deplorable." *Id.* Nevertheless, courts overstep their bounds when, in the name of fairness, they seek creative ways of expanding judicial exceptions to sovereign immunity. As Professor Currie notes, "if the Constitution is defective it should be amended, not ignored; twisting the Constitution is not good for the rule of law." *Id.*

866 (2001); *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). In fact, for all intents and purposes, the *only* situation in which Congress may legitimately abrogate state sovereign immunity is when it legislates pursuant to Section 5 of the Fourteenth Amendment, which of course post-dates the Eleventh. *Seminole,* 517 U.S. at 60, 116 S.Ct. 1114.[7] Even in that situation, the intention of Congress to abrogate sovereign immunity must be "unmistakably clear" and the legislation must pass the so-called "congruence and proportionality" test. *Kimel,* 528 U.S. at 73, 81–82, 120 S.Ct. 631.

### B. Sovereign Immunity as a Bar to Ameritech's Declaratory Judgment Action

■ In its prior opinion, the Court observed in a footnote that "the Eleventh Amendment does not bar suits, like this one, that seek only declaratory relief." *Id.* (citing *Hadi v. Horn,* 830 F.2d 779, 783 (7th Cir.1987)). Upon reflection, however, that observation cannot stand as the final word on whether sovereign immunity bars Ameritech's claim under Section 2201. *See Floyd v. Thompson,* 227 F.3d 1029, 1035 (7th Cir.2000) (a court is "free to consider an Eleventh Amendment defense on its own initiative if it chooses to do so.").

#### 1. Abrogation

Ameritech's declaratory judgment action is barred because Congress did not rely upon its enforcement powers under Section 5 of the Fourteenth Amendment when it passed the Declaratory Judgment Act of 1934, 28 U.S.C. §§ 2201–2202. *Comfort v.*

*Lynn School Committee,* 131 F.Supp.2d 253, 255 (D.Mass.2001). Instead, as a sister court recently explained, Congress acted pursuant to its powers under Article III of the Constitution:

> The scope of the Section 5 grant of power extends to legislation that is "adapted to carry out the objects the amendments have in view, whatever tends to enforce submission to the prohibitions they contain, and to secure to all persons the enjoyment of perfect equality of civil rights and the equal protection of the laws against State denial or invasion." *Ex parte Virginia,* 100 U.S. 339, 345–346, 25 L.Ed. 676 (1879). *See also Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966) (Section 5 is a positive grant of legislative power authorizing Congress to determine what legislation is needed to secure the guarantees of the Fourteenth Amendment).

> In passing the Declaratory Judgment Act of 1934, however, Congress acted pursuant to powers delegated to it by the judiciary clause of the United States Constitution, Article 3, Section 2. This provision vests in Congress the legislative authority to determine the particular method by which the judicial power may be invoked, including defining the scope of remedies and procedures appropriate to proceedings deemed "cases" and "controversies" for constitutional purposes. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Plainly, then, by creating additional procedural remedies for actions over which federal courts already retain jurisdiction rather

---

**7.** The rationale for holding that sovereign immunity may be modified under Section 5 is that the Fourteenth Amendment, "expand[ed] federal power at the expense of state autonomy" and thus "fundamentally altered the balance of state and federal power struck by the Constitution." *Seminole,* 517 U.S. at 60, 116 S.Ct. 1114. The exception is now well-established in law, though some have criticized its underlying rationale. See Alfred Hill, *In Defense of Our Law of Sovereign Immunity,* 42 B.C. L. REV. 485 (May 2001).

than enforcing substantive equal protection and due process protections, 28 U.S.C. §§ 2201 and 2202 do not derive from Section 5 of the Fourteenth Amendment. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (the Declaratory Judgment Act falls within the ambit of the judiciary clause, "so far as it authorizes relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends"). Consequently, the plaintiffs' claims against the Commonwealth [of Massachusetts] for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 are barred by the Eleventh Amendment.

*Id.* The creation of a federal declaratory judgment remedy, in other words, did not abrogate the sovereign immunity of the States.

### 2. *Ex Parte Young*

■ Although Congress did not abrogate state sovereign immunity when it passed the Declaratory Judgment Act, the Court may nevertheless consider whether the suit should proceed under the exception recognized in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), for suits against state officials that seek prospective [8] equitable relief. *Ysleta Del Sur Pueblo v. Laney, et al.*, 199 F.3d 281, 285 (5th Cir.2000) (relying on *Seminole Tribe*, 517 U.S. at 47, 116 S.Ct. 1114). Although the Court previously assumed that this case fell within the *Young* exception, a review of the opinions in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), including the principal opinion

by Justice Kennedy, persuades the Court that this was an erroneous assumption.

■ As a technical matter, the exception does not apply because McCann is named in his official and not his *individual* capacity. *Id.* at 269–70, 117 S.Ct. 2028; *but see Luder v. Endicott*, 253 F.3d 1020, 1024–25 (7th Cir.2001). An official-capacity suit is the equivalent of a suit against the State. *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Ordinarily, "the complaint could be repaired by an amendment .... naming [McCann] in [his] individual capacity." *Arrington v. Bd. of Elections*, 173 F.Supp.2d 856, 868, 2001 U.S. Dist. LEXIS 19843, *36 (E.D.Wis.) (Easterbrook, J., dissenting). This would comport with the "legal fiction" underlying *Young*, which is that a state official should not be regarded as the "State" for Eleventh Amendment purposes if he is sued in his individual capacity for prospective equitable relief. However, the "real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading." *Coeur d'Alene*, 521 U.S. at 270, 117 S.Ct. 2028. Indeed, given the implications of this lawsuit for the sovereign State of Wisconsin, it is "the kind of action so fundamentally against the [S]tate that a change in caption cannot alter the Eleventh Amendment analysis." *Floyd*, 227 F.3d at 1035.

■ Since there has been no valid abrogation of sovereign immunity in suits of this kind, *Comfort, supra,* and since the defendant has neither waived its sovereign immunity nor consented to be sued in this forum, the Court's Eleventh Amendment analysis necessarily turns on the breadth of the *Young* exception. Although the ex-

---

**8.** One could argue that the relief sought here is not truly "prospective" because Ameritech seeks reimbursement for AMA studies that have *already* been produced. However, to the extent Ameritech seeks a declaration as to the defendant's future obligations under Section 2706, the plaintiff seeks prospective relief. *See MCI,* 222 F.3d at 345.

ception is well-established, its "precise contours" are not. *Bragg*, 248 F.3d at 292. Nevertheless, it is clear that *Coeur d'Alene* narrowed the exception. As Justice Kennedy explained in his opinion in *Coeur d'Alene*, the importance of sovereign immunity counsels against a "reflexive" application of the *Young* exception in "every case where [equitable] relief is sought against a [State] officer." 521 U.S. at 270, 117 S.Ct. 2028. Instead, when considering the scope of the *Young* exception, it is necessary to consider the "real affront to a State of allowing a suit to proceed." *Id.* at 277, 117 S.Ct. 2028. Under this approach, a court may not allow a suit to proceed under *Young* if doing so "would implicate the 'special sovereignty interests' of the state and would be the 'functional equivalent' to a form of legal relief otherwise barred by the Eleventh Amendment." *MCI*, 222 F.3d at 347 (quoting *Coeur d'Alene*, 521 U.S. at 281–82, 117 S.Ct. 2028); *see also ANR Pipeline v. Lafaver, et al.*, 150 F.3d 1178 (10th Cir.1998), *cert. denied*, 525 U.S. 1122, 119 S.Ct. 904, 142 L.Ed.2d 902 (1999) (Kansas has "special sovereignty interest" in the integrity of its system of property taxation); *MacDonald v. Village of Northport*, 164 F.3d 964 (6th Cir.1999) (Michigan has "special sovereignty" interest in maintaining access to the Great Lakes); *Kish v. Michigan State Board of Law Examiners*, 999 F.Supp. 958 (E.D.Mich.1998) (Michigan has a "special sovereignty interest" in the regulation of the legal profession "since lawyers are essential to the primary governmental function of administering justice.").[9]

Thus, the holding in *Coeur d'Alene* is not limited to the "extraordinary factual context" in which it arose, nor does it represent a "narrow exception to the *Young* doctrine." *Froebel*, 13 F.Supp.2d at 854.[10] To be sure, *Coeur d'Alene* did not eviscerate *Young*. Currie, Ex Parte Young *After Seminole Tribe, supra*. However, *Coeur d'Alene* is an important precedent that requires courts to examine the degree to which an action would invade the "special sovereignty interests" of a State before allowing it to proceed under *Young*. *ANR*, 150 F.3d at 1190. The complaint in this action does not fall within the *Young* exception, as limited in *Coeur d'Alene*, because it strikes at the "core functions" and "fundamental powers" of the State of Wisconsin with respect to law enforcement. *MCI*, 222 F.3d at 348. Special sovereignty interests are clearly at stake, even if the instant suit does not literally threaten the State's "ability to function." *Glazer's Wholesale Drug Co. v. Kansas*, 92 F.Supp.2d 1228, 1233 (D.Kan.2000) (interpreting *Coeur d'Alene* very narrowly). A federal "right to reimbursement" would require Wisconsin to pay for information provided pursuant to subpoena, even though the people of Wisconsin, acting through their elected representatives, have determined that payment should *not* be required. Wis. Stat. § 968.135; *see also* Ameritech's Supplemental Memorandum of Law on the Defendant's Motion to Dismiss, p. 8 (conceding this point). Wisconsin's interests in law enforcement and the administration of criminal justice are no less important to its sovereignty than Idaho's interest in its land, which the Court in *Coeur d'Alene* found so fundamental, Kansas' interest in the integrity of its system of property taxation, *ANR*, 150 F.3d at

**9.** This conservative approach is consistent with the principle that sovereign immunity should be abolished, if at all, by constitutional amendment and not through a gradual process of judicial erosion. Currie, Ex Parte Young *After* Seminole, *supra*.

**10.** Nor did the Seventh Circuit validate this view when it affirmed the ruling in *Froebel*. See n. 5 *supra*.

1193, or Michigan's interest in regulating members of the bar. *Kish*, 999 F.Supp. at 964. Indeed, as the defendant's briefing with respect to the Tenth Amendment makes clear, the States and not the federal government "possess primary authority for defining and enforcing the criminal law" and for "the administration of criminal justice." *United States v. Lopez*, 514 U.S. 549, 560 n. 3, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).[11] A State that lacked the power to regulate such matters would be "sovereign" in name only.[12] Thus, this is "precisely the type of action which the *Coeur d'Alene* Court reasoned offends the concepts of comity and federalism." *Kish*, 999 F.Supp. at 964.

 This lawsuit is also the "functional equivalent" of a suit for damages because the only real advantage Ameritech will realize if it prevails in this Court is an ability to "present [the judgment] in state court proceedings as *res judicata* on the issue of liability." *Benning*, 928 F.2d at 778. Federal declaratory relief should be denied when the requested declaration " 'would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.' " *Id.* (quoting *Green v. Mansour*, 474 U.S. 64, 73, 106

S.Ct. 423, 88 L.Ed.2d 371 (1985)). Here, Ameritech's plain objective is a judgment that would leave little for the state court to do but calculate the *amount* of reimbursement.

To summarize, the Court concludes that this declaratory judgment action under Section 2201 is barred by sovereign immunity, which Congress lacked the power to abrogate, and that the lawsuit may not proceed under *Young* because it implicates the "special sovereignty interests" of the State of Wisconsin with respect to law enforcement and the administration of justice.

## C. Would The Relief Requested By Ameritech Offend State Sovereign Immunity?

 Even if the Court were able to entertain this lawsuit, it could not grant a declaration that Ameritech has a right to reimbursement enforceable in state court. In *Alden*, as a matter of first impression, the Supreme Court made clear that "the States retain immunity from private suit *in their own courts* " and that this immunity, like States' immunity from suit in federal court, is *"beyond the congressional power to abrogate by Article I legislation."* 527 U.S. at 754, 119 S.Ct. 2240 (emphasis added). Indeed, the Court in *Alden* noted

---

**11.** In light of its determination that this lawsuit is barred by sovereign immunity, the Court need not determine whether Section 2706 violates the Tenth Amendment. The Supreme Court has emphasized, in recent years, the importance of the Tenth Amendment as a restraint upon congressional power. *See, e.g., Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). However, when Congress legislates pursuant to one of its enumerated powers under the Constitution, such as the power to regulate interstate commerce, it does not offend the sovereignty retained by the States under the Tenth Amendment. Assuming, *arguendo*, that Section 2706 is a regulation of *telecommunications*, and not a regulation of the subpoena

power of Wisconsin courts, it is probably a valid exercise of the commerce power since telecommunications are both interstate and commercial in character and since the preparation of the AMA studies takes time away from Ameritech's interstate commercial activities. *See Lopez*, 514 U.S. at 560, 115 S.Ct. 1624 ("Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained.").

**12.** This case involves information produced pursuant to subpoena. The word "subpoena" means "under penalty," suggesting, of course, the power of a sovereign to back up its command. BLACK'S LAW DICTIONARY 1440 (7th ed.1999).

that allowing Congress to authorize such suits *in state courts* would potentially do greater violence to the constitutional order than permitting Congress to authorize them in federal court:

> In some ways, of course, a congressional power to authorize private suits against nonconsenting States in their own courts would be even more offensive to state sovereignty than a power to authorize the suits in a federal forum. Although the immunity of one sovereign in the courts of another has often depended in part on comity or agreement, the immunity of a sovereign in its own courts has always been understood to be within the sole control of the sovereign itself. A power to press a State's own courts into federal service to coerce the other branches of the State, furthermore, is the power first to turn the State against itself and ultimately to commandeer the entire political machinery of the State against its will and at the behest of individuals. Such plenary federal control of state governmental processes denigrates the separate sovereignty of the States.

*Id.* at 748, 119 S.Ct. 2240. Section 2706 is Article I legislation.[13] Thus, even if this Court could entertain Ameritech's declaratory judgment action, and even if it agreed with Ameritech that Section 2706 represented a valid exercise of the commerce power,[14] the Court would be unable to square subsection (b) with the principle of state sovereign immunity. Subsection (b) confers a right to reimbursement enforceable in the court "which issued the order for production of ... information ...." 18 U.S.C. § 2706(b). To the extent this language authorizes suit against the State of Wisconsin in its own courts, it is plainly at odds, not just with the Eleventh Amendment, but with "history, practice, precedent, and the structure of the Constitution." *Alden,* 527 U.S. at 754, 119 S.Ct. 2240.

None of the exceptions "implicit in the constitutional principle of state sovereign immunity," *id.* at 755, 119 S.Ct. 2240, applies in this case. The defendant has not consented to suit, nor is there any persuasive argument by Ameritech that Wisconsin has waived its sovereign immunity with respect to efforts to recover reimbursement in state court. *See* Ameritech's Reply Memorandum, p. 6 n. 5. Lastly, while state sovereign immunity "does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State," *id.,* the District Attorney's Office is a "prosecutorial unit" of the State of Wisconsin. *See* Wis. Stat. § 978.01(1).

## IV. Conclusion

To summarize, the Court concludes that this declaratory judgment action is barred by Wisconsin's sovereign immunity, which Congress lacked the power to abrogate when it passed the Declaratory Judgement Act of 1934. Furthermore, because the action implicates the "special sovereignty interests" of Wisconsin, it cannot be brought within the *Ex parte Young* exception as understood in *Coeur d'Alene.* Lastly, even if the Court could entertain this declaratory judgment action, it could not endorse a statutory "right to reimbursement" enforceable in state court. Such a right would be contrary to the Eleventh Amendment and the Constitution. For all of these reasons, the complaint must be dismissed.

**13.** Ameritech has not argued, nor could the Court agree, that Congress relied upon its enforcement powers under the Fourteenth Amendment when it enacted ECPA. *See* Defendant's Supplemental Brief in Support of Motion to Dismiss, Part IV.

**14.** *See* n. 11, *supra.*

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. The defendant's motion to dismiss is GRANTED.

SO ORDERED,